Good morning. First and foremost, the District Court erred by granting summary judgment on the basis of a finding there is no disputed fact on the applicant's subjective belief, even though the applicant indirectly and repeatedly testifies in the exact opposite of what the court found to be undisputed. That alone requires reversal because resolving factual inferences, especially credibility determinations, is a core function for a jury at trial after it has actually seen the witness testify. It's not something for a judge to preempt based on a cold, written summary judgment record. Now, the court came very close to admitting its error during the hearing when it said that it did not find the applicant's Dr. Jane's testimony to be credible and that the court recognized that Dr. Jane had not clearly admitted what the court later found to be undisputed. And instead, the court later tried to take that back by saying that it did not need to make a credibility determination. The only reason it gave was a credibility one, which is the court said that, well, when Dr. Jane testified, there were other alternatives available at the time that would have, and that he was well aware of them. He did not specifically name during that deposition any of the other alternatives. But the only conceivable relevance of that observation goes to Dr. Jane's credibility. Well, it wasn't that he didn't name the alternatives. He kept saying he doesn't recall, there might have been, my brain was a furnace, I just don't know, everything's churning around. He didn't ever even assert that there were particular alternatives. Not just that he didn't give them name, but he didn't seem to have any recollection of any particular alternatives. Am I misremembering his testimony? But you recall pointing out that there were others that were also optimal? I'm just saying there may be others. What I'd point you to, and I think it's probably worth going through some testimony. Starting at the appendix page, well, 686 is what we're relying on right now. At the bottom of 685 is the key not right question, where they ask him whether that was his preferred embodiment for that particular claim element, and he says not right. And so in the brief they say you should discard the not. So after they didn't get that answer, they ask him again. These are the next two Q&As that are really right on point. First he said, well, you thought yours was better than the others, right? And he said, over some others, not all. So they ask him a question three times. Well, then they said, did you have in mind any other? And he says, answer, I do not recall. I certainly may have. This is not the only optimum method, and I was quite aware of that. But he doesn't give you any of these. There may be variations that I or others may think of. Don't you think that it was his sort of waffling and lack of decisiveness that was the real problem here? I mean, gosh, who prepared this witness? Did y'all take him out drinking beforehand? I mean, what happened? Well, two things, right? First, the key part of that answer, which is why I turned us to it, is he said that the 013 light tunnel, quote, certainly is not the only optimum method, period, and I was quite aware of that. That's the key. You're right. There's other stuff there, but that is the key on point statement. I don't recall, I certainly may have, and there may be other variations. Well, if that seems confusing or unclear to you, that's exactly why his declaration was entitled to clarify any otherwise ambiguous testimony, and his declaration is certainly spot on. No one would dispute that. And so if you do think that the testimony you read could be more clear, one, the declaration legitimately clarified it. Look at the bottom of 687, where it says, so I cannot categorically say there were no other ideas in my mind at that time. In my mind. If you go up just a couple lines, it says, he's talking about whether he followed patent applications, and he talks about in my mind at the time. So this question and the one after it, when you read the answers, he's talking about his patent applications, which is to say things that he personally invented. These questions, he seemed to take these questions, he did take these questions, he affirmed this in his declaration, to mean, did you think of anything else? I mean, the question there, You think in the sense of you invent, as opposed to you think in the sense of you understand to be out there. Yeah, the question was, That's your interpretation of that passage. Yeah, the question referred to, you have no recollection that you actually thought of a preferable method. Now, to an inventor, you actually think of a preferable method, of a better method, is perfectly reasonably interpreted by an inventor, who means you. And we know that from his answer, because in his answer he's talking about his patent applications. So what we have is the first... Are you saying that he interpreted the question as whether he had invented other methods? Whether... Because actually in the separate patent application, on the so-called best mode, he does mention other methods, including the fly-eye that I gather is the one that's used by the defendants. That's right. It seems very strange, but the trial judge who was close to it, decided that there was something wrong, that he was dissembling or whatever, not telling the truth, concealing. I think it does seem very strange that there's no specificity in the specification. Well, with respect to the... If we can keep the two inventions straight, right? You mentioned a key point, the 013 patent. Well, if you keep the invention straight and separate, that's part of the argument, isn't it? That this was some other invention, and therefore had no place in the description. Right. But it didn't look as if the trial judge saw it that way. Yeah. One of the judge's errors was conflating two very different inventions. But the point you made about what was disclosed in the 013 patent application, the 013 patent is for an illumination system, something that produces light with various characteristics. In that patent application, he did disclose the prior alternatives. So we only knew of them at the time in question. We actually disclosed them in the 013 patent application. To the extent that we might believe that his intent is relevant to best mode, but I understand there's at least a footnote somewhere in one of the briefs that suggests that our case law is not clear on whether intent to conceal is a relevant inquiry, you would say that to the extent that intent might be, his disclosure in 013, which came before any of the other applications were filed and before two of the three ever issued, is clearly sufficient evidence to show he didn't intend to conceal. Or at least there's enough security facts issues that they can't prevail over that by clarifying evidence in summary judgment, yes. You know, you have cases going both ways on the intent to conceal issue, which is why there's not a lot I can add to what you just said. But if you do go with the cases that say intent to conceal is important, then yes, the fact that he did in fact disclose it to the PTO at the same time is highly relevant and certainly would at least overcome summary judgment. Now, it's important though to understand how that invention differs so much from this one, and why someone prepared for this event to testify about this deposition would not have been focused on that one. The invention here is not just something that produces light. The invention here is something that takes that light at the outset of its process and at the end of its process performs overlapping scans of a mask and substrate in a way that provides a uniform seamless exposure, which is, that's the award winning invention, not another way of spreading light. Well, that may be the core concept, but the claims, for example, 257 Claim 17 Limitation C talks about providing an illumination subsystem having the desired characteristic. The illumination subsystem, I take it, is the subject of the O3T patent, correct? The O3 patent provides one illumination subsystem, yes. So the O3 patent can be used to fulfill this one element. So to say that the illumination subsystem isn't part of the invention of the 257, if that's what you're suggesting, seems to me to be a difficult argument in light of the fact that it's claimed upon the limitations. Now, to be clear about what I was saying, we absolutely agree that an illumination subsystem is part of the 257. You need an illumination subsystem that produces light with certain characteristics. And the 257 patent treats that essentially as a prior art part. It says in the preferred embodiment for the illumination subsystem in the 257, the specification says that it is a pulse radiation source, such as a laser or a lamp. Well, for the original source, but the way source is referred to in the patent, if I understand it correctly, is not simply the original laser, but it's the laser as processed through the black box that ultimately emerges in the O1-3 as being the illumination tunnel and so forth, and produces a hexagonal, evenly distributed, large source of light. Right? And that's the front end of the 257 process. Once you've got that uniform polygonal light, the other staffs of this process then manipulate that light. Right, but when you say it's the front end, it is incorporated within the claims of the 257. Yes. So it would seem to me it can't be the case that the best mode requirement does not apply here because this is a separate invention, that is, the illumination source is not claimed in the 257. Yes. I understood you to be making that argument in part. A little more precisely, which is that when the best mode requirement looks at the overall invention, the 257, so when you're talking, as this Court has called the case of mentor or randomness, when what we're talking about is one component of the broader invention, if that's a component where the patent doesn't claim, this particular patent doesn't claim to disclose anything novel about that. It treats it as a prior art part. And the expert testimony shows that a person skilled in the art would have known lots of ways of doing that and that they would all produce comparable results as the non-disclosed one for purposes of the 257 invention, which is to say they're always providing uniform shaped light up front and the 257 takes over from there, that that's not something that you have to disclose on the best mode requirement. And the reason is that otherwise the best mode requirement just becomes an unrealistic trap. If I've got a patent on a machine that's held together, among other things, that's held together by screws, if you take my deposition long enough about everything that's in there, you may eventually find out I have a, personally speaking, I have a preferred brand of screws. But that's not something I have to disclose so long as there are lots of screws that will hold the machine together equally well. The reason is otherwise you get this unrealistic level of detail. And Mentor and Random Action expressly reject that. In Mentor, the method involves a vibrating probe and the system there, the sophistication there, describe the frequencies at which it should vibrate, but not the person's preferred circuitry for making the probe. This court held that there's no best mode issue there because the person skilled in the art, the patent gives the person skilled in the art what they need to do the rest. They can figure out that circuitry, they can figure out some other circuitry, but as long as you know what the novel part is, which is the vibrating probe at a certain frequency, that's enough disclosure. But am I wrong in Mentor, my recollection, and I very well could be wrong, was that that wasn't part of the claim? That the element you're discussing now wasn't expressly called out in the claim itself where here it is? The claim elements there, I mean it's a method claim, so it doesn't claim a product, but yeah, the method steps there, the first couple expressly refer to using a vibrating probe. So the circuitry for the vibrating probe is something that would, or however you make up the vibrating probe, circuitry or otherwise, is something that was absolutely, you know, part of describing the face of the claim. Can I ask you just real quickly, I know you want to say it for the whole time, but about the declaration. Are you arguing to the court that if the court had credited the declaration, he didn't really exclude it, he just said he was going to give it no weight, right? I don't really know how to take what he did exactly, vis-à-vis the declaration. I'm a little confused because I think the Second Circuit precedent is pretty clear that, you know, a cooked-up affidavit that clearly contradicts prior testimony, you know, is out for summary judgment purposes. It can't save the case. But he didn't necessarily conclude that exactly, and he didn't exclude it, he just gave it no weight? How would you describe his treatment of the declaration? I would say that he failed to come up with, I mean, I'd say he failed to deal with it. You know, I agree with you that under the precedent, the declaration could not contradict the deposition, and it didn't. It could clarify it. Now, whether to submit it was one of these damned-if-you-do, damned-if-you-don't situations, because if you do, it looks offensive, but if you don't, we get the questions you ask, which is, well, I find this unclear, why didn't you clarify it? Well, he did put in a declaration to clarify it. And so the declaration can clarify it, and I agree the judge gave no basis, no legal basis. Do you think the declaration fills in the details to such an extent that it could be sort of the straw on the camel's back that effectively should have prevented summary judgment here? I mean, is your argument if he had given proper weight to the declaration itself, then this case might very well be differently decided. I mean, the declaration spot-on says what we think the testimony spot-on says, which is that at the time, there were other methods that were equally good. He was aware of that. He didn't view those as being better than the others for purposes of performing the 257 invention. And that's... Sorry. Did you finish your thought? I was trying to ask, what are the issues on which you're seeking trial? On the credibility of the inventor, on whether this particular mode should have been disclosed in the other patents, not only in the 013, or whether there were other modes, or whether it was deliberately withheld? I'm saying it's hard to imagine how it would have been deliberately withheld since it was in the 013 application, which was already on file. Are you seeking a summary judgment that even if it should have been disclosed, it wasn't deliberate and no harm? The... I mean... On remand, I mean, it's the defendant's right that we're raising this in a validity defense and have to overcome that there aren't convincing evidence. So to some extent, the question is what they will argue. But we think that, yeah, first, there is a fact question as to the applicant's subjective intent. That's an issue that's almost never appropriate for summary judgment, as this Court has said. And here, it squarely testifies to the exact opposite of what the Court found his intent to be. So that's a question... That's at most a question of fact for the jury, especially under the clear and convincing standard. The second thing... Our second point, yes, is that we don't... As a matter of law, we just don't think the best mode requirement applies at this level of detail. Just as it did not in... I mentioned randomness before. It's a very recent decision. Joy. It's a non-presidential decision, but it holds the same thing. And then the third point, the one that Judge Moore brought up, is that if you do find... If you go with the cases that say that a specific intent to conceal is required, then, yeah, we don't see how there can be intent to conceal when he was disclosing it. And the question is just whether he disclosed it in the wrong place. Did you get the answer to your question? Yeah. Okay. If I could ask one more question. Yes. Dr. Smith's declaration seems to come pretty close to saying... I mean, I know he argues around this, but he seems to come pretty close to saying that there really wasn't anything novel in NAO 13, certainly not with respect to the uniformizer tunnel. Is that your understanding of what he's saying? There was nothing novel about the fact that it produced a result that other things were already producing. No, he goes a little farther than that. He says that beam shaper uniformizers, not result, the device, such as the one that constitutes part of the O13 patent, were well-known in the prior art at the time of the filing of the O13 and 257. Now, he seems to hang his argument, he seems to say in part, that, well, the O13 has other ingredients that rescue it from what appears to be a concession of non-novelty here. What is it in the O13 that has that effect? Sure. Well, I mean, first, I will say the 257 is the award-winning, widely acclaimed invention here. The other one, the 103... The O13. Excuse me, the O13, thank you. As far as we know, Envix is the only company that's ever practiced it. I mean, that's not... It's a nice invention, it was patented, but it's clearly not a big thing. And the reason is that, look, the phrase beam shaper uniformizer or hexagonal beam shaper uniformizer is important to understand exactly what it means. Because, well, I think it's gotten tossed around in the briefs a bit. What it refers to is an illumination system that uniformizes and shapes the beam. That's really it. And there were, as Professor Smith's declaration explains, and the O13 patent explains, there were other ways of doing that before, of shaping and uniformizing the beam. So, that phrase doesn't... Beam shaper uniformizer doesn't inherently refer to the O13. The O13 is a specific way of doing that. And so, in our sense, the O13 is... It's not important, but it's a valid and novel patent because of the way that it does something that others were doing. All right. Let me ask you one final question, if I could. The... Two of the patents in this case... Well, first of all, how important in the great scheme of things in this case is the 257 patent as opposed to the other two? And by that I mean, if the 257 is invalidated, if the other two are not, does this case go forward in pretty much the same way? Or does that drive a stake through the heart of the case? And the reason I ask, of course, is because there is a distinction between the 257 and the other two with respect to the date of application and issuance of the O13. A point that you make in passing in your brief that you don't do very much by way of fleshing it out. So, my first question is, is this distinction between the sets of patents important for the case as a practical matter? And if it is not, then I want to have you address the effect of the O13s having issued on the best mode argument with respect to the other two. Very good point. If the case went forward with the two other patents but not the O13... No, not the 257. I'm sorry, not the 257. I'm going to have to check and get you a full answer. But, as I understand it, the other two are more specific than the 257, but they are asserted. We do think that they're infringed and valid. So, it's a different case if we're relying on the more specific, just like it always is. But, as I understand it, sure, the case would go forward. We'd be less happy if the case would go forward. Okay, but I wouldn't be able to get much by way of law on the question of, alright, so an inventor has a patent which is out there. It doesn't happen to be alluded to in a later patent. But, nonetheless, it's the inventor's own patent. And in his own patent application, he says, I think this is the best way to do it. Right? Or at least as good as any other way to do it. Better than the prior art, as he described the prior art. But only for purposes of efficiency, which is really important. Because that's not a best mode issue. Cost is not a best mode issue. But, I think you're right. The best mode, the disclosure, the sufficiency of the disclosure of the best mode is measured by the knowledge of a person skilled in the art to some extent. Right? The courts hold that in lots of cases. So, at least at that level of generality, the sufficiency of the disclosure is measured by the knowledge of a person skilled in the art. A person skilled in the art knows of this patent. A person skilled in the art knows that this patent applicant thinks that this is his preferred way of doing something. Or at least as good as any other. And so that would then, I think, it's not a patent, but I think you reason yourself right there. I guess I thought that I understood our precedent to say you can't use the prior art to fill in the failure to disclose the best mode. But what you're saying, if I understand your argument, is it's not just using it to fill in the best mode. It's also using it to fill in the leap that this inventor, in this invention in 257, would have believed that what was disclosed in 013 was the best mode, right? I mean, because that's, there's two questions. One, would one of skilled in the art know about it? Well, our case law says that's not enough. And then the next one is, would it disclose to one of skilled in the art that this is his best mode? And you're saying the very fact that it was patented elsewhere would be the evidence that would disclose that to one of skilled in the art? Yeah, I think it's, I mean, obviously... It's kind of a leap. I mean, that's certainly not supported by our case law. You're asking us to do something quite different. Right, I mean, at this point, I mean, I'll confess, we didn't argue in the brief. It's just something that Judge Bryson just thought of, or thought of. But it is, I think the reason it works, thinking about it, is that you do look, at some level, you look to the knowledge of a person skilled in the art to understand what's disclosed. And what's disclosed here, there's a fair amount that is disclosed here. And if you also knew that the same person had done the L1-3 patent, I think it would be reasonable to construe the disclosures here in light of what you already knew about the same person who's using the L1-3 patent. It's a unique fact pattern. I've never seen it before. But I think that it does work for the reason that Judge Bryson suggested. The district judge seemed to think that there was a deliberate withholding of some sort. And the vigor with which he criticized the inventor's testimony. It's very hard to imagine how that could be when the other patent application was unfiled. But how do you explain this curious omission? The omission of the details of the L1-3 specification in the 257 specification. I was going to say one thing. Remember, in terms of the district court's vigor, he was reading the same thing you were. He's never seen Dr. Jane either. So he was just reading exactly what you were in coming to the conclusion. He's not in a better position than you, in other words, on this type of summary judgment record. But in terms of why it's not in there, the reason it's not in there is that the L1-3 patent application, this is for light tunnel, so you describe it and tell your light tunnel. When you've got an invention for something that's a lot broader, a lot bigger, and for this purpose, there were lots of light tunnels available. Dr. Jane liked his own, obviously. But there were lots of other light tunnels available. So this patent application focused on what this patent said was novel about it. The novelty of this invention, how to do this broader invention, doesn't get you the same level of detail as you would have in a patent specification that deals with one part of it. So even though Dr. Jane in L1-3 came up with a novel way to do a light, to do an illumination source, that doesn't mean that illumination sources generally, for purposes of the 257, were novel or needed to be disclosed in great detail in the 257 because there were other ways of doing it. Here's one way of looking at it. There's other ways, but if he thinks this is the best light tunnel, doesn't he have a duty to disclose it? If it's best for a best mode reason, as this court has said. That's right. The one reason that he gave in the L1-3 and subsequently for liking his better than the others was that he thought that the others tended to reduce efficiency, is what the L1-3 says. And at that point, when we're talking about the efficiency with which light is produced, that doesn't have any bearing on the nature and quality or functioning of the 257 because the 257 is the first step, as I've been saying before, is the first step. It needs the production of light with certain characteristics. Once it's got the light with those characteristics, the rest of it takes over and performs in surely the same way no matter how that light was produced. And that's why, under cases like Mentor and Random X, the efficiency with which that light is produced isn't a best mode issue for the 257. It doesn't affect the quality or functioning of the 257. Unless the quality, as in the equal distribution of light across the hexagonal outlet screen is the same with respect to the uniformizer tunnel as it is with respect to a diffuser or any other device. If there is a better quality of distribution of light from the 2013 invention, then that would be a difference that would count in the best mode scale, I suppose. That certainly could. The only evidence on this point is Professor Smith's declaration because they didn't, even though they have the burden of proof, they didn't. And Professor Smith's declaration, at most, you may want to argue that's a fact on demand, but our point is that once you've got that, they can all produce comparable amounts or comparable quality of uniform light By the way, I apologize for the fact that this entire declaration is not in the JA. It should be because there are four pages of it in the JA and more of it, as I was saying. It actually is quite helpful. So let's hear from the other side and we'll save everybody time in the Q&A. Thank you. Mr. Donner, you have a fair amount of extra time if you need it. Thank you, Your Honor. Good morning and may it please the Court. I submit, Your Honors, that there is no genuine issue of material fact in this case, that this case focuses heavily on documentary evidence, which I would like to summarize, that we have a situation here where having irrefutable documentary evidence and significant admissions the inventor and the expert of ANVIC are trying to run away from it inconsistently with the Second Circuit cases. So let me tell you what the evidence is. It starts with a notebook. Dr. James said he kept a notebook, his only notebook. He had a single notebook. And he put all his ideas in this notebook. And what ideas did he put in this notebook? He had an illumination system to be used in a lithography system. And as part of that illumination system in the notebook, he had a light tunnel, what has been called the hexagonal light tunnel. He followed that with the 013 application. And what does he disclose in the 013 application? He discloses the very thing which Judge Bryson mentioned was claimed in Claim 17C in the 257 patent, the light tunnel. And he also discloses the preliminary steps and structure for the light tunnel, namely the formation of a hexagonal image. That's exactly right. And this is what I think is so curious. It had already been filed in another patent application. It would have made no sense to deliberately withhold it. And the best mode in validation requires a certain amount of culpability. If it were accidental or marginal, with no harm done because it's in the other application which was already on file. It's very hard for me to understand why this evolved the way it did. Your Honor, it's easy to understand and I'll explain why I believe it is. That would help. Dr. Jane expressly said he made a speech at the SBIE conference in March of 1991 and the 013 patent had not yet issued. It was two and a half years after the 257 application had been filed. And he expressly said in his testimony that he was not about to disclose the details of his light tunnel because the 013 application had not yet issued as a patent. It was a secret application at that time. This was before the patent applications were published after a year and a half after filing. So he deliberately or Envik was deliberately gaming the system. They were trying to keep a key element trade secret. Now, he could not have relied on the 013 application for that disclosure. There was no reference, there was no cross reference in any of these cases to any of the other cases. And it was a secret application. So he wanted to have his cake and eat it too. So what did he do? He filed three applications. The 257 application and the other two patents on appeal. And what appears in those applications? A black box at the critical point of departure. Yes, but of course for the 240 application and the 236 application 013 had already issued before they were even filed. So the secrecy argument that you're making as far as I can tell only has any logical application to the 257. Your Honor, I disagree for this reason. There was, there's no, there would be no indication to the world that that was his best mode of practicing the 257 or the other two applications. There is a case, U.S. Gypsum versus National Gypsum involving Perlite. Perlite was on the market and the court found it was a failure to satisfy the best modes because it was not clear that the particular Perlite was the best mode of practicing this invention. So your question is a follow-on to the question that Judge Bryson asked before when he talked about the distinction between the three cases. There's no indication to the world that that was his best mode. And Dr. Smith in his declaration pointed out that there are all kinds of systems that he said were comparable. He used the word substantially equivalent. He used the word comparable. So as far as the world knew there were a lot of systems out there that were comparable, that were usable, but the world would not have known that this was his best mode. And so, therefore, the fact that the 013 patent issued before those other two were filed, I submit, does not detract from the position of the world. The world wouldn't have known it's his best mode, but I don't believe our case law requires you to identify it expressly as your best mode only to disclose it, even if you bury it amongst the disclosure of many alternative modes. So, for example, if he had incorporated by reference the 013 patent into the 240 and 236, would you then agree that the best mode was satisfied in this case? In those cases, if he had incorporated by reference, yes. I would agree. But that wasn't done. There was no incorporation by reference. There was no cross-reference to any of these cases. And, moreover, he went out of his way in 1991 to basically say he didn't want to disclose it to the world. He wanted to keep it as a trade secret until the 013 patent had issued. So he felt it was very important. One of the arguments they make is this was just a production detail. Well, the argument that it's a production detail is not only inconsistent with the fact that he wanted to keep it a trade secret, but it's inconsistent with the 505 patents, with which he said he completely agreed. There's a statement in the 505 patents that basically said that the 013 system played a key role in a variety of large-area, high-throughput lithographic patterning systems, including those of the 257, 236, and 240 patents, and a key component of that was the light tunnel. So this is hardly a production detail that didn't have to be disclosed. But it says in the record, I don't know if it's been litigated or not, that at least some of the defendants aren't using that procedure anyway, but have another, a different light source. So that of itself, doesn't it show that there are other modes that are at least as good or usable? Your Honor, if I understand your question correctly, the issue is not whether there are other modes. The issue is not even whether some expert, such as Dr. Smith, thinks that there are other modes that are comparable. The issue is, what did he think was the best mode? And he said, without any provocation, he volunteered the statement that, as far as he was concerned, he believed the 013 system to be the best he knew of as of March 1991, two and a half years after the 257 application had been filed. He himself said he thought it was the best. And he agreed. When he was confronted with the 505 statement, and he said, do you agree with that statement that it played a key role? He said, completely. I completely agree. So that's half of the two-part best mode requirement, the other half being deliberate concealment. But it was already on file in a patent application that was pending and proceeding. So that doesn't really, if that weren't the case, it would be much easier to say that it was being deliberately concealed. Your Honor, the 013 application was a secret application. It might never have issued. It might never have issued. And he didn't want the world to know that that was his best mode, unless and until that patent issued. So I know of no case, I know of no case, and if there is, there may well be, but I know of none and we have looked for one, which said that if there's a pending application to which no cross-reference is made, so that the world does not know, even the patent office does not know, that there is another application which has a particular disclosure. He cannot rely on that, and they cannot rely on that, to satisfy its best mode requirement. Well, to the extent that the law may require you to prove intent, that he intended to conceal, I don't know why Judge Newton's suggestion wouldn't at least create a question of fact for him. I didn't intend to conceal. For goodness sakes, I disclosed it in a patent, and that patent issued prior to me even filing two of the three patents here. Why doesn't that set of facts that Judge Newton has discussed with you at least create a question of fact that prevents summary judgment? It may not prevail, may not entitle him to summary judgment, but why doesn't it give him a day in court on those facts? Your Honor, with the case law, when you say intent to conceal, the case law in the best mode area does not require intent as that word is used, for example, in inequitable conduct jurisprudence, where you actually have to have a thought process. The case law says concealed, and it even sometimes says deliberately concealed, intentionally or inadvertently. The case law consistently says that. So his thought process, while relevant, because in this case I think it helps us, he deliberately did not want to let anybody know that was his best mode unless and until that patent issued. So, whether or not, so I don't think that creates a disputed issue of genuine fact, and in fact, to tell you the truth, Andrick has never argued that point. That point, to my recollection, is not argued on appeal, and I suggest that if they were going to argue it today, they waive that argument, but whether or not they waive it, I submit, it does not undermine our position. They also make... Let me ask you this, this is a practical matter. If you were confronted with the problem of having potentially, let's say, two inventions here, one is the device that's downstream from the hexagonal screen, and the other is the illumination source, which is upstream of the hexagonal screen, and by the hexagonal screen, of course, I'm talking about what's the number in the diagram, it's 21. So, you're an inventor, you've got two inventions. One is what shows up in the 257 downstream of 21, and the other is what shows up in the 013, which is upstream of 21. Is your best approach to try to preserve both of those inventions and patent them either together or separately? If you want to go separately, is your best approach to make sure that when you claim the patent that's upstream of 21, would that be what you would advise a client who wanted to separately seek protection for the elimination source? Well, you run into double patenting issues here, but what one can do very easily is one could do what they did. One could file a 257 patent with its claims, which generically covers the elimination system, the subsource that you referred to before, and one could separately file the 013 patent, or one could include claims in the 257 patent to both the genus and the species, and if they were in separate cases as they are here, the simple solution would be, which is the solution I would follow, this is a self-serving statement, but I would have a cross-reference. I am conscious of best mode issues. I would have had a cross-reference. I would have referred as I filed the 257 patent and the other two, I would have said the elimination system, the subsystem is disclosed in the 013 patent and hereby incorporated by reference. Right, but of course the 013 had not issued at the time the 257's application and issuance. It still could have been referred to. But you can refer to it as a pending patent application even though it's secret. And that would solve the best mode problem. And then when it issued, you would amend the description to include the patent office. That's not all the time. It would solve the best mode problem, but let's say the 013 didn't issue for one reason or another. The patent office found some hundred year old reference that prevented it from issuance. You've lost your right to cross-reference. If you were concerned that it might never issue, if your cross-reference said, I         then you would have to amend the 257 patent. If you were concerned that it might never issue, if your cross-reference said, I hereby disclose herein. I believe you could then amend the 257 case if you're concerned that the 013 patent might never issue and incorporate it. I do not know what would happen if that were not done and the 013 patent never issued, so you have an abandoned application and you have a patent that ultimately issues the 257 patent, which refers to an abandoned application. I do not know what would happen in that situation. I believe  still be able to require, still may be able to rely on it, but I don't know. I don't know either. The two might have foreign counterparts that would make it much harder to withdraw. Well, I agree that this is a peripheral issue, but it looks at least plausible that the idea was to find a way to achieve legitimate   separate applications, and in thinking about how, in fact, what the punishment should be for having determined that the 013 patent would never be violated, and determined now retrospectively that the statute was violated, how, in fact, one might have proceeded, because if, in fact, this event had proceeded plausibly, I still, and the public didn't suffer because it was ultimately patented, how the law should treat this. Your questions? I believe I know what the law, the best mode law is at the time of this patent, and I know that it was deliberately withheld. The outline in the SPIE conference expressly said not disclosed, the details not disclosed, because there was a patent pending after the exact language. So, there's no doubt in my mind that the thought process was to keep it secret. What the thought process was, and moreover, the fact that there's a black box at the key spot suggests that it was deliberately omitted from the three patents on appeal today. You don't include a black box with no description, whatever,  inadvertently. That was a deliberate act. Beyond that, I can't tell you. I'm not in the head of Dr. Jane or the Anzick people. But I think the evidence here is quite overwhelming that the objective evidence, which is the documentary evidence, and the fact that he admitted unprovoked, he made a statement about it being the best, which was not totally responsive to the question. He just volunteered. Where is that admission? Exactly what is the submission that you're referring to? Yes, I can tell you where it is. The best he had thought of versus the best that he was aware that was out there. I think he does say it's the best I had thought of, but that suggests the best he had invented. Can you address that to me? Your Honor, first of all, let me ask a question, and then I'll come back to you. Ladies first. Absolutely. A691 is a statement where he says, I don't recall, but I think what I described in the O-1-3 patent, that configuration for an illumination system to produce uniform  exposure, most likely that was the best I had thought of until then. That was unprovoked. He did not give that answer in response to some trick question. But that was exactly Judge Newman's point then though, is that he was talking about what he had thought of, what he had invented. In the proceeding court, he was talking about what he had filed patent applications on. So I guess the question is, does that really carry the day that he believes this was the best mode, or is this merely a statement, it's the best thing he had thought of and invented? He says until then. Your Honor, he was the inventor. First of all, he doesn't say the best I had invented, which is their argument. I'm not sure there's a difference between the two. But he was the inventor of 013, and he was the inventor of 257, and of the other two cases. So he's saying it was the best I had thought of until then. That tells me, he didn't use the word best mode, but if he were a patent attorney, he would have said that's the best mode. That's how I interpret that language. And they had tried to run away from it, and the questions that were asked of Mr. Josepher, I think, were exactly the right questions, and that is, what about  Smith's declaration? What about Dr. Jane's declaration? The Second Circuit Law is absolutely clear. You can't contradict testimony that was given, and... But where is the contradiction? The contradiction only exists if I agree with you that this statement means it's the best that existed at the time, as opposed to the best that he had personally thought of. So only if I read that sentence the way you do, is there a contradiction. Otherwise, there's no contradiction that I can see. Your Honor, I apologize. I'm not sure of the distinction you're making. The best he had thought of, the best mode, as I understand it, is what is the best way you know how to practice the invention that you have thought of, that is in your head? Whether it in fact is the best in the abstract is irrelevant to the best... But the question upon which he was answering was, did you have any other pending patent applications that dealt with uniformization of the light in an illumination system besides the application that led to the 013? So the question was based on what he had invented and what he was claiming in patent applications. And then he responds, no, the 013 was the best one of my inventions that I had thought of. I mean, clearly the question was predicated on his invention. That's what it asks in the question. So why can't we construe his answer as limited to answering the question? Your Honor, I must admit when I read that, I thought it went beyond the question. I thought his voluntary statement at the end of that quote went beyond it. But I think that was his best mode. It was the best he had thought of. He had to disclose it. That was his best mode. Whether it was the best he had invented,  was the best he had thought of, or any variation on the theme, he had to have disclosed it. But you see, of course, that the answer is no. If it's the best one he invented, but there exist better modes that other people invented and he would recognize that those are better, or at least comparable, then he doesn't have to disclose it because he has to have a subjective belief that this is the best way of doing it. Not just the best way that I thought up but I think the most reasonable and the only reasonable interpretation of that statement is that this was his best mode. When he was asked, he was asked over and over and over again, tell me what a better mode is. He had every opportunity to do it, including the declaration after his testimony, forgetting about the Second Circuit law about contradicting or not contradicting. He could never, never once, despite repeated questioning, he never once could come up with a better way of doing it than was in his 01 pre-application. So, you know, this is a totality of circumstances situation. When you look at all the circumstances, when you look about the fact that he put all of his ideas, everything he thought of in his notebook, and he carried his notebook partly to one application and partly to another, and he put a black box in one, and then he has a statement like this, and he keeps saying, I can't recall, I can't recall, I can't recall. It may have been, my mind was churning. I mean, the judge said it read like a brief, that his declaration read like a brief, and I think it was. It was written by, I assume, it was written by the judge. The   I don't recall what I   The judge said, I don't recall what I should have said. I can't recall what I should have said.   said,   recall  I should have  The judge said, I don't recall what I should have said. The judge said, I patent application in discussing the preferred embodiment says the subsystem to use is a pulse radiation source such as a laser or a lamp. It also says the preferred shape is a hexagon. And if you then go to this figure one, where the illumination system at the front is a box. But what's immediately after box 20 is 21, which is basically where the light goes through. If you look down at figure two, there's very detailed measurements of the hexagonal shape. So you've actually got a fair amount of detail in here concerning what to do with the light system. And if nothing else, there's no attempt to conceal things. There is a lot here. And what was there, obviously it's not just an enablement question, but Professor Smith explains that once you've got that, you know that there are lots of uniformizers out there that all would function equally well for this particular purpose. Well, if what's between the light source and the hexagonal screen is fairly simple,  do you explain this trivial innovation to the SBEI conference? He gave two reasons. You're one of them so far. He said, I didn't discuss it there for two reasons. One was the patent was still pending. The second he said was that other illumination systems were possible. So, in other words, he's there giving a speech on his great invention. He decided not to, the second reason he gave was that other alternatives were possible. So, in other words, he was able to discuss this invention as a board-winning invention without also discussing this other one that no one else has ever used. At a minimum, though, I mean, at a minimum, there's, we've been talking facts for a very long time now. And when we're talking factual inferences for a very long time, the one thing that tells me is it's not a summary judgment case, especially when they bear the same weight. Yeah, Dr. Jane actually said that's where he got the idea. It works the same way as a kaleidoscope. You bounce the light numerous times and it comes out as a uniform beam as opposed to the, I guess, Gaussian wave that an incoming laser... Yeah, it's the same beam. All right.  ?? ?? ?? ?? ?? ??